IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL Q.,[1]

          Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

Case No. 6:25-cv-00433-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

       Plaintiff Michael Q. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Social Security Income ("SSI") under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in February 1965, plaintiff alleges disability beginning February 1, 2015,[2] due to fibromyalgia, arthritis, Hepatitis C, back pain, trouble sleeping/fatigue, and chronic joint pain. Tr. 204-11, 220, 234. His applications were denied initially and upon reconsideration. On December 7, 2020, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 38-72. On December 22, 2020, the ALJ issued a partially favorable decision, finding plaintiff disabled as of February 1, 2020 (i.e., the date he changed age categories). Tr. 18-32.

Plaintiff timely filed an appeal. On September 3, 2023, Judge Hernandez granted the parties' Stipulated Motion to Remand and entered Judgment reversing and remanding the case for further administrative proceedings. Tr. 961-64; *see also* Tr. 968-74 (Appeals Council Remand Order).

On October 18, 2024, a second ALJ hearing was held, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 911-27. On November 12, 2024, the ALJ issued another partially favorable decision again finding plaintiff disabled as of February 1, 2020. Tr. 890-902.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since February 1, 2015. Tr. 893. At step two, the ALJ determined the following impairments were medically determinable and severe: "osteoarthritis, lumbar degenerative disc disease, and fibromyalgia." *Id.* At step three, the ALJ found that

---

[2] Plaintiff initially alleged disability as of May 30, 2012, but amended his onset date to coincide with "the day before his 50th birthday." Tr. 220.

plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 895.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> [He can] frequently climb ramps and stairs, but occasionally climb ladders, ropes, and scaffolds. He can frequently balance, but occasionally stoop, kneel, crouch, and crawl. He can frequently handle and finger bilaterally and occasionally reach overhead with the dominant right upper extremity. He can frequently reach in all other directions with [the] dominant right upper extremity. He must avoid exposure to workplace hazards such as unprotected heights and exposed, moving machinery.

Tr. 896.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 900. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform prior to February 1, 2020, despite his impairments, such as routing clerk, marker, and cashier II. Tr. 900-02.

## DISCUSSION

This case concerns a discrete period – namely, February 1, 2015, through January 31, 2020 – and plaintiff makes a single argument on appeal. Specifically, he asserts the ALJ erred by "reject[ing] the reaching limit offered by Dr. Leinenbach." Pl.'s Opening Br. 4 (doc. 7).

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in

determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

On May 30, 2019, Derek Leinenbach, M.D., completed a consultative examination in relation to plaintiff's physical impairments. Tr. 585-88. In the "History of Present Illness" section, he remarked:

> [Plaintiff] is a pleasant, right-handed, 54-year-old gentleman who endorses chronic widespread body pain. He endorses widespread myalgia, arthralgia, and stiffness. The pain is most intense in the right shoulder and bilateral wrists, hips, knees, and ankles. He struggles to reach overhead with the right arm due to shoulder pain and stiffness. He struggles with postural and weight-bearing activities due to right hip, bilateral knee, and bilateral ankle pain. Right hip radiographs from 1/2012 showed mild degenerative joint disease. Right ankle radiographs from 1/2012 showed no significant abnormality. He endorses aching neck and back pain. Lumbar radiographs from 1/2012 showed mild degenerative disc disease at L3-4. He reports prior rheumatology workup and says he was referred to a "fibromyalgia clinic" but never ended up going. He has a history of chronic hepatitis C and underwent interferon therapy and reports remission of disease. He endorses chronic fatigue. He reports prior chiropractic, massage, and physical therapy with only mild improvement in symptoms.
>
> He uses a cane whenever he leaves his residence. The claimant endorses exertional shortness of breath and wheezing. He endorses wheezing associated with seasonal and weather changes as well as perfumes and dusts. He has a 30 pack-year smoking history. He endorses occasional coughing which is usually non-productive.

Tr. 585. In terms of activities of daily living, plaintiff endorsed bathing, toileting, dressing, and eating independently, as well as "perform[ing] light household chores [but he] does not drive; he gets rides most of the time [and] will walk up to half a block." Tr. 586.

Upon examination, plaintiff displayed a normal range of motion in his left shoulder but right shoulder "abduction [was] 160 degrees, adduction [was] 40 degrees, extension [was] 40

degrees, [and] flexion [was] 160 degrees." Tr. 587. The range of motion for his elbows, forearms, wrists, and thumb/fingers were "[w]ithin normal limits." *Id.* In terms of gross/fine motor skills, plaintiff could "grip and hold objects securely to the palm by the last three digits," and "grasp and manipulate large and small objects with the first three digits. Both thumbs function with normal opposition." *Id.* His motor strength was "5/5 in the bilateral upper and lower extremities, including bilateral grips. Muscle bulk and tone [were] normal throughout." *Id.* In the "General Findings" section, Dr. Leinenbach wrote, in relevant part: "There is tenderness with palpation along the right anterior shoulder. No significant shoulder crepitus is appreciated. Right shoulder pain is endorsed with internal and external rotation. Shoulder impingement tests are limited due to alleged pain." *Id.*

The doctor diagnosed plaintiff with: "1. Fibromyalgia with functional overlay. 2. Right shoulder rotator cuff syndrome. 3. Lumbar degenerative disc disease. 4. Right hip degenerative joint disease. 5. Asthma, mild, intermittent." Tr. 588. In the associated "Functional Assessment/Medical Source Statement" section, Dr. Leinenbach specified:

> Standing/walking is limited to 6 hours in an 8-hour workday due to #1, #3, and #4, above. There are no sitting limitations. No assistive device is required.
>
> Lifting/carrying is limited to 50 pounds occasionally and 10 pounds frequently due to #1, #2, #3, and #4, above.
>
> Climbing, crouching, crawling, stooping, and balancing are limited to an occasional basis due to #1,#2, #3, and #4, above.
>
> Right-sided reaching is limited to an occasional basis due to #2, above. Left-sided reaching is without limitation. There are no handling, fingering, or feeling limitations. The claimant should not work at unprotected heights due to an irregular gait.
>
> The claimant should limit exposure to dusts, fumes, and other pulmonary irritants due to #5, above. There are no other environmental limitations.

Tr. 588.

The ALJ found Dr. Leinenbach's opinion "partly persuasive." Tr. 899. In particular, the ALJ indicated:

> Dr. Leinenbach did not provide an explanation for his opinion but his exam findings generally support it with respect to walking, standing, and overhead reaching limitations. He offered no support for occasional balancing, as he noted that [plaintiff] did not require the use of a cane and range of motion was within normal limits throughout the bilateral lower extremities in his exam and throughout the remaining evidence. Occasional right-sided reaching is consistent with [plaintiff's] demonstration of full motor strength of the upper extremities despite subjective pain on exam and it is consistent with the remaining evidence that notes some decreased range of motion on exam of the right shoulder in 2016.

*Id.* Thus, the ALJ appears to have credited Dr. Leinenbach's shoulder limitations and incorporated them into the RFC by restricting plaintiff to occasional right-sided overhead reaching and frequent reaching "in all other directions with [the] dominant right upper extremity." Tr. 896.

Plaintiff argues that this was erroneous because "[t]he ALJ offered no explanation whatsoever for why Dr. Leinenbach's opinion was consistent but needed to be changed." Pl.'s Opening Br. 7 (doc. 7). Plaintiff further maintains that this error was "harmful" because the VE's testimony – i.e., that representative occupations still existed in significant numbers, even if the RFC contained a limitation to occasional right-sided reaching in all directions – "was not supported by substantial evidence." *Id.*

Initially, "[a]n ALJ's RFC need not correspond precisely to a physician's limitations; rather, the ALJ must resolve ambiguities in the record and translate Plaintiff's impairments into concrete functional limitations." *Osborn v. Comm'r Soc. Sec. Admin.*, 2016 WL 6133831, *9 (D. Or. Oct. 19, 2016); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ is not required to mirror the exact language of a medical opinion so long as the RFC is consistent therewith). While far from a model of clarity, Dr. Leinenbach's disputed limitation was plainly premised on plaintiff's right-shoulder impairment and his subjective reports of problems

reaching overhead, as plaintiff's grip and range of motion for his right elbow, forearm, wrist, and thumb/fingers were normal, and his motor strength, muscle bulk, and tone in his right upper extremity were intact. As such, the ALJ's RFC does not necessarily appear to be inconsistent with Dr. Leinenbach's report.

Moreover, plaintiff's contentions are fatally flawed in three respects. First, Dr. Leinenbach's opinion was not retrospective – i.e., it did not relate plaintiff's functioning as of the May 30, 2019, examination date to the February 1, 2015, alleged onset date. This is significant because the ALJ found that plaintiff's "pain was managed" with medication, he sought no specialized and only sporadic treatment during 2019 and 2020, and he was disabled due to a change in age category as of February 2020, and plaintiff does not now challenge these findings on appeal. Tr. 898. "[I]t is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where, as here, it does not relate to the dispositive timeframe and otherwise "was not offered as retrospective analysis." *Morgan v. Colvin*, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) (collecting cases).

Second, and relatedly, plaintiff's date last insured for the purposes of his DIB claim was June 30, 2018, and he acknowledges receiving partial benefits for "the SSI portion," which he applied for in February 2018. Tr. 18 893, 914. Yet SSI benefits are not available "predating the month in which [a claimant] applies for benefits, no matter how long he has actually been disabled." *See, e.g., Carley G. v. Kijakazi*, 2022 WL 16951843, *3 (S.D. Cal. Nov. 15, 2022). In sum, plaintiff's appeal actually does not speak to the period between February 2015 and May 2019, or his entitlement to DIB benefits.[3]

---

[3] Notably, plaintiff does not seek the immediate payment of benefits as of a particular date based on the ALJ's purported error but instead contends "a remand is necessary to determine if other

Third, even assuming the ALJ erred, any such error was harmless. The VE identified 123,000 routing clerk positions, 165,000 marker positions, and 458,000 cashier II positions in the national economy consistent with the ALJ's RFC. Tr. 921-23. The VE explained that light work was not precluded because the dispositive hypothetical question (and, by extension, the ALJ's RFC) did not limit plaintiff's reaching with his non-dominant upper left extremity. Tr. 923-24. Nevertheless, the VE also indicated that, even if plaintiff was limited to occasional right-sided reaching in all directions, the job numbers for the routing clerk and marker occupations would be reduced by "50 percent" but the cashier II numbers would be "unimpacted." Tr. 924. Stated differently, roughly 602,000 representative occupations would remain. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) (25,000 jobs in the national economy presented a close call but was nonetheless significant) (collecting cases).

Although plaintiff attacks the VE's testimony that the cashier II job numbers would not change with a limitation to occasional right-sided reaching in all directions, he does not cite to any contrary authority and the purported conflict that he identifies between the VE's testimony, and the Dictionary of Occupational Titles ("DOT") is not apparent. *See* DOT § 211.462-010, *available at* 1991 WL 671840 (cashier II occupation requires frequent reaching, but does not require reaching with both arms or distinguish between reaching with the dominant and non-dominant extremities); Tr. 923-25 (VE explaining that her testimony was consistent with the DOT but "more specific" in regard to reaching – "because the DOT will say that if something requires frequent reaching, but it doesn't tell you in the information about whether all of that reaching could be accomplished with the non-dominant upper extremity" – and "supplement[ed] with [her]

---

work in the national economy would be available [if Dr. Leinenbach's] limitation to occasional reaching with the right upper extremity were included." Pl.'s Opening Br. 7 (doc. 7).

professional experience which includes researching these issues with employers from work and then also performing job analysis"). And, importantly, even if the cashier II job were eliminated entirely, the significance requirement would still be met.[4]

Finally, while plaintiff characterizes the VE's job numbers as mere estimates, the Ninth Circuit has repeatedly reaffirmed that an "ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (as amended); *see also Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020) (where the claimant "does not identify any evidence undermining the vocational expert's testimony," it "is ordinarily sufficient by itself to support an ALJ's step-five finding"); *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192-93 (9th Cir. 2022) ("a VE's expert opinion may count as substantial evidence even when unaccompanied by supporting data" since the "VE's recognized expertise provides the necessary foundation for his or her testimony [such that] no additional foundation is required") (citations and internal quotations omitted). Accordingly, reversal in not warranted in regard to this issue.

---

[4] In his reply, plaintiff asserts that it was unreasonable for the ALJ "to rely on the VE's testimony regarding the remaining positions" because "the VE erred in claiming that all cashiers can be performed with one arm limited to occasional reaching." Pl.'s Reply Br. 2 (doc. 12-1). Essentially, plaintiff contends the entirety of the VE's testimony was unreliable due to an alleged mistake in regard to one of three representative occupations. Yet, as the Commissioner observes, "[i]f plaintiff wanted to know how the remaining jobs would still be available here, he could have asked [but] did not do so." Def.'s Resp. Br. 5 (doc. 8) (citations and internal quotations omitted). Indeed, plaintiff's failure to challenge the accuracy of the VE's job numbers either at the hearing or before the Appeals Council precludes relief on this basis. *See, e.g.*, *Mark E. v. Comm'r, Soc. Sec. Admin.*, 2024 WL 2048688, *4 (D. Or. May 7, 2024); *Shaibi*, 883 F.3d at 1108-10; *cf. Wischmann v. Kijakazi*, 68 F.4th 498, 506-08 (9th Cir. 2023) (even where a claimant properly preserves "his challenge to the VE's job-number estimates" in accordance with *Shaibi*, "the bare assertion by [the claimant's] attorney coupled with the uninterpreted raw data do not give rise to a material inconsistency that the ALJ is required to resolve" or that otherwise warrant remand).

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED, and this case is

DISMISSED.

IT IS SO ORDERED.

DATED this 30th day of December, 2025.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge